IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIANE D. MIMNAUGH and<br>PHILIP L. MIMNAUGH, JR.,<br><br>    Plaintiffs,<br><br>v.<br><br>TOYOTA MOTOR CREDIT CORPORATION,<br>JIM SPICUZZA, and JUDICIAL RECOVERY<br>SYSTEMS, INC.,<br><br>    Defendants. | Case No. 04 C 4607<br><br>Judge Mark Filip |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Diane D. Mimnaugh ("Mrs. Mimnaugh") and Philip. L. Mimnaugh, Jr. ("Mr. Mimnaugh") (collectively, the "Mimnaughs") filed suit against defendants Toyota Motor Credit Corporation ("Toyota"), Jim Spicuzza ("Spicuzza"), and Judicial Recovery Systems ("JRS") (collectively, "Defendants"). The Mimnaughs' first amended complaint (the "Complaint") alleges a violation of Article 9 of the Illinois Commercial Code (Count I), the federal Fair Debt Collection Practices Act (Count II), the Illinois Collection Agency Act (Count III), the Illinois Consumer Fraud and Deceptive Business Practices Act (Count V), and common law trespass (Count IV). (D.E. 8.)

Toyota is named as a defendant as to Counts I, IV, and V. Spicuzza and JRS are named as defendants as to Counts II, III, IV, and V. Defendant Toyota moved to dismiss Counts I, IV and V. (D.E. 14.) Defendant JRS moved to dismiss Counts II, III, IV and V. (D.E. 28.) For the

reasons stated below, the Court denies the motions with respect to Counts I, II, IV and V, grants the motions with respect to Count III, and dismisses Toyota from Count IV.

## I. Factual Background

The following facts are taken from the Complaint. The Court accepts the allegations as true, as precedent instructs, for present purposes. The Court takes no position on whether any of the allegations are actually well-founded.

In July 2000, the Mimnaughs purchased a 2000 Toyota RAV4 vehicle from a car dealership and executed a retail installment contract. (D.E. 8 ¶ 8.) Toyota provided the financing, and purported to take a security interest in the vehicle. (*Id.* ¶¶ 8-9.) At some point after purchasing the vehicle, the Mimnaughs fell behind in their payments to Toyota. (*Id.* ¶ 10.)

At the end of 2003, Mrs. Mimnaugh contacted Toyota and arranged with a Toyota representative to pay $250.00 per week for six weeks to catch up on the payments, with the first payment beginning after New Years in 2004. (*Id.* ¶¶ 10-11.) Approximately one week later, Mrs. Mimnaugh mailed a check to Toyota for $250.00, and Toyota cashed the check. (*Id.* ¶ 12.) Thereafter, a Toyota representative contacted Mrs. Mimnaugh and told her that partial payments were no longer acceptable and that the full amount that was past due needed to be paid. (*Id.* ¶ 13.) Unable to catch up on the payments, the Mimnaughs attempted to sell the vehicle, including placing an ad and receiving calls in response. (*Id.* ¶ 14.)

Prior to locating a buyer for the car or paying off the loan from Toyota, on or about January 31, 2004, Mrs. Mimnaugh answered the door of the Mimnaugh's home and saw a man standing outside the door. (*Id.* ¶ 15.) The man at the door, who was wearing an official-looking badge in a leather or leather-like case around his neck, told Mrs. Mimnaugh that he was "Agent

2

Spicuzza" and that he had come about the vehicle. (*Id.* ¶¶ 16-17.)[1] Spicuzza then told her that there was a new law about financial robbery, and if she did not surrender the vehicle right then, she would go to jail. (*Id.* ¶ 16.)

Mrs. Mimnaugh believed Spicuzza was a law enforcement officer and that if she did not surrender the vehicle, she would be arrested and taken to jail. (*Id.* ¶ 18.) Mrs. Mimnaugh was scared and began crying. (*Id.* ¶ 19.) She left her house, open the locked garage door, and removed the vehicle. (*Id.* ¶ 20.) Spicuzza then called another repossession agent, who came to the Mimnaughs' home and drove the vehicle off the property. (*Id.* ¶ 22.) Before he left the Mimnaughs' home, Spicuzza told Mrs. Mimnaugh that she would not be responsible for paying any repossession fees. (*Id.* ¶ 23.)

Subsequently, Mrs. Mimnaugh received from Toyota a notice of its intent to sell the vehicle. (*Id.* ¶ 26.) The notice included a sum of $500.00 for repossession fees that the Mimnaughs would need to pay to retrieve the vehicle. (*Id.* ¶ 27.)

## II.  Standard of Review

"A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint for failure to state a claim upon which relief may be granted." *Johnson v. Rivera*, 272 F.3d 519, 520-21 (7th Cir. 2001). In deciding a motion to dismiss, the court must assume all facts alleged in the complaint to be true, construe the allegations generously, and view the allegations in the light most favorable to plaintiffs. *See, e.g., Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000); *Meriwether v. Faulkner*, 821 F.2d 408, 410 (7th Cir. 1987). The

---

[1] The Complaint alleges that "Agent Spicuzza" is Defendant Spicuzza, an agent of Defendant JRS, a repossession company. (*Id.* at 5-6.)

3

issue is not whether plaintiffs ultimately will prevail, but whether they are entitled to present evidence in support of their claim. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Dismissal for failure to state a claim is not appropriate unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003) (quoting *Conley*, 355 U.S. at 45-46).

### III. Discussion

#### A. Count I: Violation of Article 9 of the Illinois Commercial Code against Toyota

Count I alleges that Toyota, through its agents Spicuzza and JRS, breached the peace during the repossession of the vehicle in violation of section 9-609(b)(2) of the Illinois Commercial Code. (D.E. ¶¶ 29-34.) Specifically, the Mimnaughs allege that Spicuzza and JRS repossessed the vehicle by trickery and deceit, threatening arrest by impersonating a law enforcement agent and representing that Mrs. Mimnaugh would be arrested if she did not surrender the vehicle. (*Id.*) Toyota contends that Count I should be dismissed because these allegations do not rise to the level of "breach of the peace" under section 9-609. (D.E. 14 ¶ 6.) The Court respectfully disagrees.

Section 9-609 provides that, after default, a secured party[2] may take possession of the collateral "without judicial process, if it proceeds without breach of the peace." 810 ILCS 5/9-

---

[2] Toyota, as the secured party, can be liable for any wrongful repossession on the part of JRS and Spicuzza, at least under certain circumstances. *See* Uniform Commercial Code Comment to § 9-609 ("In considering whether a secured party has engaged in a breach of the peace . . . courts should hold the secured party responsible for the actions of others taken on the secured party's behalf, including independent contractors engaged by the secured party to take possession of collateral.").

609(b)(2). The negative implication of this section is that the secured party may not employ self-help techniques if doing so would cause a breach of the peace. Section 9-609 does not define or explain the phrase "breach of the peace"; the drafters left "that matter for continuing development by the courts." Uniform Commercial Code Comment to § 9-609.[3]

Courts in Illinois have construed the phrase "breach of the peace" within the context of self-help repossession generally, but apparently have not had occasion to do so with respect to attempts to trick the debtor by false personation of a law enforcement office or threats of imprisonment. For example, *Leavitt v. Charles R. Hearn, Inc.*, 312 N.E. 2d 806 (Ill. App. 1974), concluded that "implied force may constitute a breach of the peace[,]" and rejected the argument that a finding of actual violence was necessary to a breach of the peace finding. *Id.* at 811. Several years later, *Dixon v. Ford Motor Credit Co.*, 391 N.E.2d 493 (Ill. App. 1979), held that "when a creditor repossesses in disregard of the debtor's unequivocal protest, the repossession may be found to be in breach of the peace. *Id.* at 487 (citation omitted). More recently, an Illinois court concluded that the phrase "breach of the peace" connotes:

> conduct which incites or is likely to incite immediate public turbulence, or which leads to or is likely to lead to an immediate loss of public order and tranquility. Violent conduct is not a necessary element. The probability of violence at the time of or immediately prior to the repossession is sufficient.

*Chrysler Credit Corp. v. Koontz*, 661 N.E.2d 1171, 1173 (Ill. App. 1996).

Courts outside of Illinois have addressed whether various ruses to trick the debtor into giving consent to repossession constitute "breach of the peace"; there is little agreement among

---

[3] The portions of Illinois Commercial Code that the parties cite appear to adopt (or endorse in some fashion at least) the corresponding commentary from the Uniform Commercial Code. Citations to the U.C.C. Commentary come from the printed versions of the Illinois Commercial Code cited by the parties.

5

these cases. For example, a call to the debtor asking him to bring the vehicle to a garage on the pretext of a need for repairs was approved by one court, *Cox v. Galigher Motor Sales Co.*, 213 S.E.2d 475, 480 (W.Va. 1975)), and disapproved by another, *Barham v. Standridge*, 148 S.W.2d 648, 650 (Ark. 1941)); *see also K.B. Oil Co. v. Ford Motor Credit Co., Inc.*, 811 F.2d 310, 314 (6th Cir. 1987) (concluding that misrepresentation to a third party that owner of collateral gave permission for repossession does not constitute a breach of peace). But one form of trickery which has tended to warrant judicial disapproval is impersonation of a law enforcement officer. White and Summers, *Uniform Commercial Code* § 34-7 (2005). "Courts are very sensitive to fraudulent or unauthorized use of a policeman's badge by a repossessing creditor." *Id.* Even where there is no oral protest to the repossession, and thus the debtor seemingly consented, "[i]f the creditor's agent obtains consent by fraud (flashing a counterfeit policeman's badge) . . ., the 'consent' may not free the creditor from liability." *Id.*

Two (admittedly old) decisions from the Alabama courts illustrate this principle. In *Rhodes-Carrol Furniture Co. v. Webb*, 160 So. 247 (Ala. 1935), the court found a secured creditor, who had gained entrance by telling the debtor's wife that he was a police officer when he was not, liable for trespass. *Id.* at 248. The court reasoned that the jury could reasonably infer that possession was obtained against the consent of the wife, even though there was no evidence of any active resistance on her part. *Id.* In *Stallworth v. Doss*, 194 So.2d 566 (Ala. 1967), the reposessor "accosted the plaintiff on a street . . . showed him a badge and told him that 'I have orders to take your car.'" *Id.* at 567. Under these facts, *Stallworth* found that the repossession constituted an unlawful taking because a reasonable fact-finder could infer that possession was

obtained against the debtor's consent. *Id.* at 568. The cases (and particularly *Rhodes-Carrol Furniture*) are somewhat old, but the principles reflected in them are sound.

In addition to officer impersonation cases, there are many cases which hold that the presence of an actual law enforcement officer during a self-help repossession renders the repossession unlawful. *See, e.g., Waisner v. Jones*, 755 P.2d 598, 602 (N.M. 1988); *Stone Mach. Co. v. Kessler*, 463 P.2d 651, 655 (Wash. App. 1970). The Comment to section 9-609 specifically provides,

> [t]his section does not authorize a secured party who repossesses without judicial process to utilize the assistance of a law enforcement officer. A number of cases have held that a repossessing secured party's use of a law enforcement officer without benefit of judicial process constituted a [breach of the peace].

Uniform Commercial Code Comment to § 9-609.

*Waisner, supra*, teaches that one of the primary reasons why introduction of a law enforcement officer to self-help repossession renders the repossession unlawful is that the "presence of the official, without more, is sufficient to chill the legitimate exercise of the defaulting party's rights." *Id.*, 755 P.2d 598, 602 (N.M. 1988) (citation omitted); *accord, e.g., MacLeod v. C & G Invest. Group (In re MacLeod)*, 118 B.R.1, 3 (Bankr. D.N.H. 1990) (any presence of an officer, regardless of the officer's degree of participation in the actual repossession, "override[s] the debtor's right to object" and, as a result, is a breach of peace); *Stone Mach. Co.*, 463 P.2d at 655 (the presence of the officer, even when the officer did not take part in the repossession and merely showed up in local sheriff uniform, prevented the debtor from exercising his right to resist a nonjudicial repossession by reasonable means, which circumscribed the purpose and intent of the self-help statute and "amount[ed] to constructive

force, intimidat[ion] and oppression constituting a breach of the peace"). In other words, what seems to matter is the effect of the putative officer's presence on the debtor, not whether the reposessor is actually a law enforcement officer or merely impersonating one.

Besides the propensity to foreclose willing consent on the part of the debtor, "other policies (such as the desire to penalize those who pose as policemen)" are implicated by false personation of a law enforcement official with respect to self-help repossessions. White and Summers, *Uniform Commercial Code* § 34-7 (2005); *see also Stone v. Freedom*, 82 N.E.2d 571, 572 (N.Y. App. 1948). Although not dispositive, the Court notes that impersonating an officer constitutes a Class 4 felony under the Illinois Criminal Code. 720 ILCS 5/32-5.1 (West 1998); *see also People v. Thoennes*, 777 N.E.2d 1075, 1077, 1080 (Ill. App. 2002) (flashing badge and falsely claiming to be a police officer warrants conviction). The statute exists to protect "citizens who would be harmed or deceived by those acting under the color of authority." *People v. Ellis*, 696 N.E.2d 1, 3 (Ill. App. 1998). Although the issue of whether any particular impersonation of a police officer presents a meaningful risk of breach of peace may well be a fact-sensitive one, in this case at least, based on the allegations presented, the Court is unconvinced that the Plaintiffs' claim is defective *per se* as a matter of law.

In this regard, the Court need not decide whether any repossession involving mere trickery or deceit, for example, constitutes a cognizable breach of the peace. Rather, the Court simply finds that the facts alleged in the Complaint—the reposessor called himself "Agent Spicuzza" and flashed a badge—could suggest a situation where Mrs. Mimnaugh did not have a meaningful opportunity to protest the repossession, and one in which the repossession constituted a breach of the peace. *See, e.g., MacLeod*, 118 B.R. at 2 (presence of officer "override[s] the

debtor's right to object" and, as a result, is a breach of the peace). The allegation regarding Spicuzza's threat of imprisonment suggests even greater foreclosure of the opportunity to protest than existed in the cases discussed herein finding breach of the peace based on false personation of an officer or the mere presence of a putative officer during a repossession. Finally, the Court finds that false personation of an officer, a Class 4 felony in Illinois, could at least, in some circumstances, create a "loss of public order." *Chrysler*, 661 N.E.2d at 1173 (actual or potential "loss of public order" can constitute breach of the peace for purpose of section 9-609). As explained above, the issue of whether any particular impersonation actually did create a meaningful opportunity for loss of public order is an issue that may be context specific and best evaluated at the trial or summary judgment stage. However, at least on the basis of the arguments in the briefs, the Court is unpersuaded that this count is doomed as a matter of law.

For all of these reasons, the Court finds that the Mimnaughs have pled sufficient facts to sustain a breach of the peace claim under section 9-609, and denies Toyota's motion to dismiss Count I.

### B.     Count II: Violation of Fair Debt Collection Practices Act Against Spicuzza and JRS

Count II alleges that Defendants Spicuzza and JRS violated section 1692f(6) of the Fair Debt and Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. Specifically, the Mimnaughs allege that Spicuzza and JRS had no present right to possession of the vehicle because they breached the peace during the repossession by threatening arrest and impersonating a law enforcement agent. (D.E. 8 ¶¶ 37-38.) JRS contends that Count II should be dismissed for failure to plead sufficient facts for a breach of the peace finding.

9

Section 1692f(6) provides in relevant part:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> [. . . .]
>
> (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if -- (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest[.]

15 U.S.C. § 1692f(6).[4] To determine whether the debt collector had any present right to possession of the property for purposes of this section, courts in this district and elsewhere look to the applicable state self-help repossession statute. *See, e.g., Purkett v. Key Bank USA, N.A., et al.*, No. 01 C 162, 2001 WL 503050, *2 (N.D. Ill. May 10, 2001) (Leinenweber, J.) (citing *Clark v. Auto Recovery Bureau Conn., Inc.*, 889 F. Supp. 543, 546 (D. Conn. 1994)). In other words, if the debt collector violated the self-help repossession statute, by breach of the peace or otherwise, then the collector had no present right to possession of the property under section 1692f(6) of the FDCPA.

---

[4] There is no dispute or question that JRS is a "debt collector" for purposes of section 1692f(6) of the FDCPA. *See Purkett v. Key Bank USA, N.A., et al.*, No. 01 C 162, 2001 WL 503050, *2 (N.D. Ill. May 10, 2001) (Leinenweber, J.). Section 1692a(6) defines the term "debt collector" to include only those persons or business who collect "debts,"and thus "repossession companies are ordinarily beyond the scope of the FDCPA." *Id.* (citing 15 U.S.C. § 1692a(6)). But, as the *Purkett* court stated, "[t]here is an exception to this general rule, however, which states that '[f]or the purpose of Section 1692f(6) . . . such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." *Id.* (citing 15 U.S.C. § 1692a(6)). Therefore, a company such as JRS that repossesses collateral on behalf of a secured party, even though the company does not pursue the debt itself, constitutes a "debt collector" solely for purposes of section 1692f(6). *Id.*

10

For the reasons discussed in Section III.A above, the Court finds that the Mimnaughs have pled sufficient facts to state a breach of the peace claim under 810 ILCS 9-609, the applicable self-help repossession statute, and thus JRS's motion to dismiss Count II is denied.

### C. Count III: Violation of Illinois Collection Agency Act Against Spicuzza and JRS

Count III alleges that Spicuzza and JRS violated the Illinois Collection Agency Act ("ICAA"), 225 ILCS 425/9, by impersonating a law enforcement officer, threatening arrest, and representing that Mrs. Mimnaugh would be liable for financial robbery. (D.E. 8 ¶ 43.) JRS contends that Count III should be dismissed because, *inter alia*, JRS is not a "collection agency" for purposes of the ICAA. (D.E. 19 ¶ 9.) The Court agrees.

The ICAA regulates the practice of "collection agencies." 225 ILCS 425/2.03. The statute contains its own definition of "collection agency," as well as language describing certain categories of persons and entities excluded from the definition. *See* 225 ILCS 425/2.02 and 2.03. Thus, an entity may escape liability under the ICAA either by failing to qualify as a "collection agency" under the definitional language, or by falling within one of the exclusions. Because repossession companies[5] do not fall within any of the specific exclusions, *see* 225 ILCS 425/2.03, the Court looks to the general definition of "collection agency" to determine whether the ICAA applies to JRS.[6]

---

[5] As mentioned above, there is no dispute, for present purposes at least, that JRS is a repossession company. (D.E. 1 at 8 ("Defendant [JRS] is an Illinois corporation engaged in the business of motor vehicle repossession in this district.")).

[6] Neither party cited any case addressing whether or not a repossession company is a "collection agency" for purposes of the ICAA; nor could the Court locate any published decision addressing the issue.

11

The ICAA defines "collection agency" to mean "any person, association, partnership, or corporation who, for compensation, either contingent or otherwise, or for other valuable consideration, offers services to collect an alleged delinquent debt." 225 ILCS 425/2.02. In other words, like the FDCPA, the ICAA defines "collection agency" to include only those entities pursuing "debt." *See id.; see also* note 4, *supra*. The statute does not define the term "debt." In the absence of statutory definitions or other evidence indicating a different legislative intent, words in a statute are to be given their "ordinary and popularly understood meaning." *Sanders v. Jackson*, 209 F.3d 998, 999 (7th Cir. 2000).[7]

To ascertain the ordinary and popular meaning of words, courts look to the dictionary as a resource, and in particular, at how a phrase was defined at the time the statute was drafted and enacted. *Id.* (citing *Molzof v. United States*, 502 U.S. 301, 307 (1992); *Newsom v. Friedman*, 76 F.3d 813, 817 (7th Cir. 1996).) The fourth edition of Black's Law Dictionary, which was the current edition when the ICAA was enacted in 1974, defines "debt" as "a sum of money due by certain and express agreement." Black's Law Dictionary 490 (4th ed. 1951). The latest edition, the eighth, similarly defines "debt" as "liability on a claim; a specified sum of money due by agreement or otherwise." Black's Law Dictionary 432 (8th ed. 2004). Repossession companies pursue secured property, not the debt itself (that is, not a "sum of money"). *Accord, e.g., Purkett*, 2001 WL 503050 at *2;[8] *Jordan v. Kent Recovery Services, Inc.*, 731 F. Supp. 652, 658 (D. Del.

---

[7] None of the parties in this case cite any legislative history concerning interpretive questions.

[8] Notably, unlike the FDCPA, the ICAA does not contain an exception to the general exclusion of entities that pursue secured property, but not the debt itself. *Compare* note 4, *supra*.

12

1990) (reposessor was not a "debt collector" within meaning of section 1629a(6) of the FDCPA where it sought recovery of the plaintiff's property, but did not seek recovery of the debt itself).

The stated purpose of the ICAA is "to protect consumers against debt collection abuse." 225 ILCS 425/1a. "In contrast to a debt collector, an enforcer of a security interest with a present right to a piece of secured property attempts to retrieve something which another person possesses but which the holder of the security interest still owns." *Kent Recovery Servs.*, 731 F. Supp. at 658 (internal quotation marks omitted). Moreover, "[u]nlike the debtor who lacks the money sought, the possessor of secured property still has control of the property." *Id.* As a result, "[a]ny failure to return the property to the rightful owner occurs not through misfortune but through a deliberate decision by the present possessor to avoid returning the property." *Id.* And, accordingly, the evil sought to be regulated by the ICAA—*i.e.*, harassing attempts to collect money which the debtor does not have—"is not implicated by the actions of an enforcer of a security interest with a present right to the secured property." *Id.* (internal quotation marks omitted).[9]

Based on the language and policy of the statute, as well as precedent interpreting similar language in the FDCPA, the Court finds that JRS is not a "collection agency" for purposes of the ICAA. The Mimnaughs, therefore, cannot state a claim against JRS (or its agent, Spicuzza) under the ICAA. Accordingly, the Court dismisses Count III.

---

[9] This fundamental distinction between secured interests and secured property, on the one hand, and unsecured interests and general debt, on the other, is reflected in other areas of law. For example, in a corporate reorganization, there will be fundamentally different interests (indeed, with separate teams of creditors' committees, attorneys, and other professionals) for the secured interest holders and the unsecured creditors. *See, e.g.*, Baird, *Elements of Bankruptcy* 207-10 (3d ed. 2001).

## D. Count IV: Common Law Trespass Against All Defendants

Count IV alleges that the repossession of the vehicle constituted an illegal trespass to the Mimnaughs' property. (D.E. 8 ¶¶ 48-49.) JRS contends that Count IV should be dismissed because Spicuzza committed no breach of peace, and Mrs. Mimnaugh voluntarily turned over the vehicle to him. (D.E. 19 ¶ 15.) The Court respectfully disagrees.

A trespass to real property is an invasion "of the exclusive possession and physical condition of land." *Livers v. Wu*, 6 F. Supp.2d 921, 936 (N.D. Ill. 1998) (Hart, J.) (citations omitted). A person is liable for a trespass to land "irrespective of whether he or she causes harm to a legally protected interest." *Id.* (citing *Dial v. City of O'Fallon*, 411 N.E.2d 217, 220 (1980)). No liability for trespass attaches, however, when the person's actions are based on privilege or implied consent. *Desnick v. Am. Broadcasting Cos.*, 44 F.3d 1345, 1351 (7th Cir. 1995). As the *Livers* court noted, "[o]ne such privilege arises when a person is entitled to the immediate possession of a chattel which has come upon the land of another otherwise than with the putative trespasser's consent or by his or her tortious conduct." *Id.*, 6 F. Supp. 2d at 936. It is not necessary to determine definitively at this early stage in the case whether JRS, or its agent, Spicuzza, was privileged to enter the Mimnaughs' property in order to repossess the vehicle. As stated in Section III.A above, the Mimnaughs have alleged sufficient facts to state a breach of the peace claim under 810 ILCS 5/9-609(b)(2), and in so doing, raise a factual issue as to whether JRS had a present right to possess the vehicle. *Cf. Headspeth v. Mercedes-Benz Credit Corp.*, 709 A.2d 717, 720-21 (D.C. App. 1998) (concluding that, in the absence of allegation that repossession was accomplished by breaching the peace, debtor cannot state a claim for trespass based on repossession of car from debtor's fenced-in driveway, rather than from alleyway).

14

Accordingly, the Court finds that the Complaint sufficiently asserts a claim for trespass at this stage of the proceedings.[10]

Toyota also contends that it should be dismissed from Count IV because neither the allegations nor the prayer for relief with respect to Count IV are directed towards Toyota (D.E. 14 at 7.) The Court agrees. Even though the caption to Count IV reads, "Common Law Trespass Against all Defendants," the allegations in Count IV refer only to "Defendants Spicuzza and [JRS]" and the prayer for relief seeks judgment against only "Defendants Spicuzza and [JRS]." (D.E. 8 at 7-8.).[11] In short, the Court finds that the Complaint fails to give even minimal notice within the meaning of Fed. R. Civ. P. 8 that the Mimnaughs are pursuing a claim for trespass not only against Spicuzza and JRS, but also against Toyota. *See, e.g., Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002) (stating that plaintiffs do not have to plead facts or legal theories, but that complaint "would be insufficient" if defendant "would not have known how to respond" to the charges).

---

[10] Because the Court dismisses Toyota from Count IV, the Court need not consider the other grounds for dismissal raised by Toyota with respect to this count. Tangentially, in reply, Toyota raises the argument for the first time that the applicable Retail Sales Contract, which Toyota attached to its motion to dismiss, specifically authorizes Toyota to enter onto the Mimnaugh's property to recover the vehicle due to non-payment and thus the Mimnaughs cannot state a claim for trespass. The Court notes that it is well-settled that a reply brief is not the appropriate vehicle for presenting new arguments or legal theories. *See United States v. Feinberg*, 89 F.3d 333, 340-41 (7th Cir. 1996) ("The reply brief is not the appropriate vehicle for presenting new arguments or legal theories to the court."); *Weizeorick v. ABN AMRO Mortgage Group, Inc.*, No. 01 C 713, 2004 WL 1880008, at *2 (N.D. Ill. Aug. 3, 2004) (holding that "[i]t is elementary that parties may not raise new arguments or present new facts in their reply, thus depriving their opponent of the opportunity to respond").

[11] In contrast, Count V of the Complaint, which also contains a caption referring to "all Defendants," contains specific allegations against "Defendants, through their agents Spicuzza and [JRS]" and seeks judgment against "all Defendants." (*Id.* at 8-9.)

For these reasons, the Court denies JRS's motion to dismiss Count IV, and dismisses Toyota from Count IV, without prejudice to the Mimnaughs' ability to replead allegations against Toyota.

### E. Count V: Illinois Consumer Fraud and Deceptive Business Practices Act Against All Defendants

Count V alleges that the Defendants, through their agents, Spicuzza and JRS, committed deceptive and unfair acts in violation of section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFDBPA"), 815 ILCS 505/2. (D.E. 8 ¶¶ 51-52.) Specifically, the Mimnaughs allege that Defendants violated the ICFDBPA based on the following misrepresentations or practices: (i) representing that Mrs. Mimnaugh would go to jail if she did not surrender the vehicle; (ii) impersonating a law enforcement agent to repossess the vehicle and gain access to the Mimnaughs' private property; and (iii) charging a $500.00 repossession fee to retrieve the vehicle after promising that there would be no repossession fee. (*Id.* ¶ 52.) Toyota and JRS contend that Count V should be dismissed for failure to state a claim under the ICFDBPA.

The parties agree that to state a claim under the ICFDBPA, a plaintiff must allege that (1) defendant engaged in a deceptive act or practice, (2) with the intent that plaintiff rely on the deception, (3) in the course of trade or commerce, and (4) the deception was the proximate cause of plaintiff's alleged injury. *Accord Neff v. Capital Acquisitions & Mgmt. Co.*, 238 F. Supp. 2d 986, 994 (N.D. Ill. 2002) (citing *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. App. Ct. 1997)). The first and third elements are not at issue here.

As to the second element, Toyota contends that, since Spicuzza's alleged misrepresentation regarding repossession fees was made *after* he had possession of the vehicle,

he could not have intended for Mrs. Mimnaugh to rely on the misrepresentation. (D.E. 14 ¶ 16.) The Court respectfully disagrees. The ICFDBPA requires a defendant's intent that a plaintiff rely on the deceptive practice; actual reliance is not required. *Siegel v. Levy Org. Dev. Co.*, 607 N.E.2d 194, 198 (Ill. App. Ct. 1992). "'A party is considered to intend the necessary consequences of his own acts or conduct.'" *Dwyer v. Am. Express Co.*, 652 N.E.2d 1351, 1357 (Ill. App. Ct. 1995) (quoting *Warren v. LeMay*, 491 N.E.2d 464, 474 (Ill. App. Ct. 1986)). The Complaint specifically alleges that the Defendants intended for Mrs. Mimnaugh to rely on the misrepresentations regarding imprisonment and impersonation of a law enforcement officer, in addition to the misrepresentation regarding repossession fees. (D.E. 8 ¶ 53.) In addition, the allegations in the Complaint, read in the light most favorable to the Mimnaughs, allow the conclusion that Spicuzza intended for Mrs. Mimnaugh to rely on these statements and acts during the repossession to convince her to turn over the vehicle. (*Id.* at 18.) Accordingly, the Court finds that the Complaint sufficiently pleads the second element of an ICFDBPA claim.

As to the fourth element, JRS and Toyota contend that the Complaint fails to allege that the Defendants proximately caused any injury. (D.E. 14 at 6; D.E. 19 ¶18.) This contention is misplaced. With respect to proximate cause, the Complaint specifically alleges that "as a proximate result of the foregoing misrepresentations and actions, Plaintiff suffered . . . damages." (*Id.* ¶ 56.) The Complaint also provides that the Mimnaugh's alleged injuries (*i.e.*, loss of vehicle, various forms of mental distress) occurred after the great majority of the allegedly deceptive or improper conduct. (*Id.* ¶¶ 18-20.) In other words, the allegations in the Complaint can be read consistent with the notion that there was no intervening cause that would break the chain of proximate causation. *Accord, e.g., Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 595

17

(Ill. 1996) (citing *Petrauskas v. Wexenthaller Realty Mgmt, Inc.*, 542 N.E.2d 902, 905 (Ill. App. 1989))).

Finally, JRS and Toyota contend that Count V should be dismissed for failure to allege "actual damages." (D.E. 14 at 5-6; D.E. 19 ¶ 19.) The Court respectfully disagrees. With respect to damages, under the ICFDBPA, only a person who suffers "actual damage" as a result of a violation of the act may bring a private action. 815 ILCS 505/10a. "The court, in its discretion, may award actual economic damages or any other relief which the court deems proper." *Id.* In *Greisz v. Household Bank (Illinois)*, 8 F. Supp.2d 1031, 1043 (N.D. Ill.1998) (Norgle, J.), the court analyzed the phrase "actual damage" within the context of the ICFDBPA. *Id.* at 1043.

Because the ICFDBPA does not define the phrase "actual damage," *Greisz* looked to the most current edition of Black's Law Dictionary at the time the "actual damage" requirement was added to the statute in 1996. *Id.* According to that dictionary, "actual damages" are:

> Real, substantial and just damages, or the amount awarded to a complainant in compensation for his actual and real loss or injury, as opposed on the one hand to 'nominal' damages, and on the other to 'exemplary' or 'punitive' damages. Synonymous with 'compensatory damages' and with 'general damages.'

Black's Law Dictionary 390 (6th ed. 1990) (cited by *Greisz*, 8 F. Supp. 2d at 1043). In addition, *Greisz* stated that "it is well established in Illinois that 'actual damages include compensation for mental suffering.'" *Id.*, 8 F. Supp. 2d at 1043 (quoting *Pedersen v. Taylor Funeral Home*, 96 C 1588, 1997 WL 260383, at *3 (N.D. Ill. May 7, 1997) (citing *Village of Bellwood v. Human Rights Comm'n*, 541 N.E.2d 1248, 1258 (1989)); *see also Roche v. Fireside-Plymouth, Mazda,*

*Inc.*, 600 N.E.2d 1218, 1228 (Ill. App. Ct. 1992) (holding that jury award of $750 for "aggravation and inconvenience" for violation of ICFDBPA was not erroneous).[12]

*Greisz* granted the defendant's motion for summary judgment on the plaintiff's ICFDBPA claim because the plaintiff failed to provide any evidence to support her claim that the defendant caused her emotional distress. *Id.*, 8 F. Supp. 2d at 1044. In contrast, in the case *sub judice*, the Mimnaughs need not provide any evidence to support the allegations in the Complaint at this point. Rather, at this early stage, the Complaint need only *allege* "actual damage" to sustain a claim under the ICFDBPA. The Complaint specifically alleges "economic and emotional damages, including fear, humiliation, frustration and aggravation." (D.E. 8 ¶¶ 52-56.) Under *Greisz* and the precedent cited therein, the Court finds this allegation, read in context with the other allegations incorporated into Count V, sufficient to satisfy the "actual damage" requirement for a private action under ICFDBPA. Accordingly, the Court denies the motions to dismiss Count V.

---

[12] Defendants argue that Illinois law is generally reluctant to allow monetary recoveries in cases involving purely mental or emotional harm. *See generally, e.g., Livers v. Wu*, 6 F. Supp. 2d 921 (N.D. Ill. 1998) (Hart, J.) ("As a general matter, Illinois courts are reluctant to allow recovery for purely mental or emotional distress.") (citation omitted). In this case, however, Plaintiffs have at least alleged economic harm, and the Court is unpersuaded that these allegations are insufficient to allow the case to proceed to discovery.

## IV. Conclusion

For all of these reasons, the motions to dismiss (D.E. 14 and 28) are granted in part and denied in part.

So ordered.

_____
Mark Filip
United States District Judge
Northern District of Illinois

Date: 7-11-05